UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| EMERSON HERNANDEZ CHACON,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, TODD BLANCHE, DAVID VENTURELLA, SAMUEL OLSON, and WARDEN,<br><br>Respondents. | CAUSE NO. 3:26cv885 DRL-SJF |

OPINION AND ORDER

Immigration detainee Emerson Hernandez Chacon, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Hernandez Chacon replied.

As a preliminary matter, the show cause order directed Mr. Hernandez Chacon to explain why all respondents other than the Warden of Miami Correctional Facility, the only respondent who exercises "day-to-day control" over him, should not be dismissed under *Kholyavskiy v. Achim*, 443 F.3d 946, 952 (7th Cir. 2006). Relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the court of appeals concluded the proper respondent in an immigration habeas case challenging the constitutionality of a petitioner's confinement is the warden of the facility where the petitioner is being held, not a supervisory official who has the authority to free the petitioner. *See also Doe v. Garland*, 109 F.4th 1188, 1192 (9th Cir. 2024); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3rd Cir. 2021). Mr. Hernandez Chacon does

not address this issue in his reply. Therefore, these additional parties will be dismissed. For clarity, the court refers to the responding party as the Warden from this point forward.

Mr. Hernandez Chacon is a citizen of Honduras who was first apprehended by the United States Border Patrol on February 25, 2024, as an accompanied juvenile, served a Notice to Appear, and released on an Order of Recognizance [8-1]. While the removal proceedings were ongoing, Mr. Hernandez Chacon filed an application for a U visa, which is a form of relief available under the Immigration and Nationality Act to victims of certain qualifying crimes who have assisted or are willing to assist law enforcement. *See* 8 U.S.C. § 1101(a)(15)(U). He was ordered removed on July 19, 2024, under 8 U.S.C. § 1182(a)(6)(A)(i) but was granted withholding of removal. The following year, on May 22, 2025, the United States Citizenship and Immigration Services (USCIS) determined that Mr. Hernandez Chacon's U visa application was bona fide eligible but that the yearly statutory cap for U visas had been reached, so he was placed on a waitlist until new visas became available. The bona fide determination meant he was eligible for employment authorization and to be placed in deferred action while he remained on the waitlist. Once a visa becomes available, USCIS will make a final determination regarding his eligibility for a U visa.

On April 24, 2026, Mr. Hernandez Chacon was arrested in Indiana for failing to appear at a hearing for criminal charges of operating a vehicle while intoxicated. *See State v. Hernandez Chacon*, No. 49D34-2603-CM-006993 (Marion Super. Ct. filed Mar. 9, 2026). After he posted bond to be released on the criminal charges, Mr. Hernandez Chacon was turned over to United States Immigration and Customs Enforcement (ICE) pursuant to a detainer

[8-1]. ICE cancelled his Order of Release on Recognizance and intends to remove him to a third country.

On June 10, 2026, Mr. Hernandez Chacon was served a Warning for Failure to Depart, advising him of his obligation to cooperate with removal efforts and an Instruction Sheet, listing tasks he must complete within 30 days to comply with his obligation to assist in obtaining a travel document [8-5]. That same day, he was also served with a Notice of Removal, informing him that ICE intends to remove him to Mexico. Mr. Hernandez Chacon refused to sign to confirm receipt of those three documents.

On June 17, 2026, Mr. Hernandez Chacon filed this habeas petition, arguing that his detention after being granted deferred action is unlawful for several reasons, including as a violation of the Administrative Procedures Act, the preliminary injunction ordered in the class action *Immigration Center for Women & Children v. Noem*, No. 2:25cv9848, 2026 WL 1455004 (C.D. Cal. May 20, 2026), procedural due process, substantive due process, and the *Accardi* doctrine. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Additionally, he argued the proposed removal to Mexico without providing him a credible fear interview violates the prohibition in 8 U.S.C. § 1231(b)(3) and the Convention Against Torture (CAT) on removing a person to a country where he is more likely than not to face persecution or torture. Finally, he argued that the attempt to remove him to a third country without providing meaningful notice or a meaningful opportunity to seek protection under § 1231(b)(3) or the CAT violates due process. In light of this, he contends his removal is not reasonably foreseeable and seeks release.

In answering the petition, the Warden (though his federal counsel) provided evidence that on July 8, 2026, USCIS denied Mr. Hernandez Chacon's application for a U visa based on the pending criminal charge, and his employment authorization was revoked [8-2; 8-4].[1] The Warden represents that ICE Enforcement and Removal Operations (ERO) is pursuing a third country removal, and once it identifies a third country and receives travel documents for Mr. Hernandez Chacon, it will expeditiously coordinate his removal.

In reply, Mr. Hernandez Chacon explains that he was being asked to sign documents that he didn't understand. He says the only notice that was translated into Spanish was the one advising him that he was to be removed to Mexico; the others were not. He reports he did not want to sign a document he didn't understand and he wanted to talk to his attorney before signing anything. His attorney sent an email to ICE officials on June 19, 2026, asking for details about the pending travel document request and whether he would be scheduled for a credible fear interview regarding his fears about removal to Mexico [14-3]. An ICE officer responded that same day:

> Mr. Hernandez-Chacon has declined to sign the departure form and has not indicated a willingness to depart.
>
> As a result, removal to Mexico cannot proceed unless he chooses to cooperate. If he continues to decline, removal arrangements may be pursued to another country, subject to applicable agreements and procedures.
>
> If Mr. Hernandez-Chacon has specific reasons for his fear of returning to Mexico, please feel free to share any relevant information.

Mr. Hernandez Chacon's attorney responded that same day, explaining that she

[1] Mr. Hernandez Chacon is contesting this decision with USCIS [14-2]. But those proceedings do not affect this decision unless and until he is successful.

> spoke briefly with Mr. Hernandez Chacon last week and he mentioned that someone had brought papers indicating he would be removed to Mexico. He also told me that he wanted to review the forms with an attorney, and he tried to tell officers he was not refusing to sign but that he wanted more time to review the paperwork with me. He also told me that everything is in English which he cannot understand which is why he asked for more time. He cannot read English and this notice is effectively meaningless to a non-English speaker.

She went on to detail the fears he has of being removed to Mexico. She also sent an email on July 22, 2026, reiterating that Mr. Hernandez Chacon has a fear of removal to Mexico and wants a hearing before an immigration judge on any proposed third country removal. She requested that any notice be provided to him through counsel and in a language he understands and relates that she advised him not to sign any forms that are not provided to him in Spanish or to his lawyer. As of July 31, 2026, when Mr. Hernandez Chacon filed his reply, he had not been scheduled for a credible fear interview.

The Warden first argues that the court lacks subject matter jurisdiction over Mr. Hernandez Chacon's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons given before, jurisdiction is secure insofar as determining whether removal is reasonably foreseeable. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, Mr. Hernandez Chacon first argues that he should be released because he has a liberty interest in his deferred action status; and by detaining him while held that status, the government *de facto* revoked it without providing him due process. Although his deferred action status was officially revoked when USCIS denied his U visa

application, Mr. Hernandez Chacon argues that later action cannot excuse the original violation, relying on *Cervantes v. Mullin*, No. 1:26cv4467 (HC), 2026 WL 2030189 (E.D. Cal. July 14, 2026). In that case, the district court joined several other courts in concluding "at the time Petitioner was detained on May 5, 2026, he had a liberty interest in his deferred action status and a property interest in his dependent work authorization, that could not be revoked without proper due process." *Id.* at 1. Although in *Cervantes* USCIS revoked the petitioner's deferred action status after his detention, the court there found that the later action did not excuse the initial unlawful detention and ordered his release. *Id.* at 1-2.

This court declines to follow that approach. A habeas corpus petition looks at the lawfulness of the current state of detention and does not look back to rectify prior mistakes. *See United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923) ("A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment.") (quotations omitted). Generally, an unlawful arrest does not invalidate a subsequent detention that is otherwise authorized. *See Arias v. Rogers*, 676 F.2d 1139, 1143 (7th Cir. 1982) ("In the criminal law, if there is probable cause to hold an accused he cannot gain his freedom by showing that the arrest was illegal, although he may be able to suppress at his trial evidence seized as an incident to his arrest. This court has applied the same principle, distinguishing illegal arrest from illegal detention, in deportation cases."); *see also I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself

suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."). Now that Mr. Hernandez Chacon no longer has deferred action, he cannot rely on that as a basis for relief. That's old news.

So the court turns to his arguments regarding the appropriateness of a third-country removal to Mexico. He argues ICE's attempt to remove him to a third country without providing him meaningful notice and opportunity to access the protections of § 1231(b)(3) and the CAT is unlawful and a violation of 8 U.S.C. § 1231(b)(3), the CAT, and due process. He acknowledges, as the government states, that third-country removals are lawful, and he explicitly says he is not seeking to force the government to comply with any particular procedures regarding third-country removals. Rather, he is relying on alleged violations of due process to show his detention is unlawful.[2] And he argues there is no significant likelihood of removal because Mexico appears to be the only country under consideration for removal, and he believes if he is removed there, he will be sent back unlawfully to Honduras, where he has shown he is likely to face persecution. He further asserts the government has not obtained travel documents to Mexico or received any assurance that Mexico will accept him.

Based on the representation that Mr. Hernandez Chacon is not seeking to challenge the procedures for third-country removals, the court does not discuss this removal process and instead focuses on whether his removal is reasonably foreseeable based on the analysis

---

[2] A procedural due process violation, alone, doesn't automatically result in release. Often, a procedural due process violation can be cured. *See Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) ("Conditional writs enable habeas courts to give States time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release.").

set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001). By statute, noncitizens who are subject to a final order of removal must be detained for a period of 90 days, during a "removal period." 8 U.S.C. §§ 1231(a)(1), (a)(2). This removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration confinement. 8 U.S.C. § 1231(a)(1)(B). Mr. Hernandez Chacon's removal period began and ended in 2024.

Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[3] Mr. Hernandez Chacon's removal under § 1182 authorizes his detention under § 1231(a)(6).

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all

[3] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. To avoid a constitutional due process problem with § 1231(a)(6), including for a noncitizen who remains in the country after being ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. Indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699. The law materially defers this difficult judgment to the Executive Branch for a total six-month period, as detention then is considered presumptively reasonable to execute a removal order. *Id.* at 700-01.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.* at 699; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. In this, the court listens with care when the government's "foreign policy

judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and supervised release on conditions that he cannot violate. *Id.* at 696.

The petitioner bears the initial burden. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). If he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701 (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

Here, Mr. Hernandez Chacon argues his removal is not reasonably foreseeable because he cannot be removed to Honduras, the government has not provided any indication that Mexico will accept him for removal or that travel documents have been requested, and no other third country has been identified as a potential option for removal. In response, the government argues Mr. Hernandez Chacon's refusal to sign the three forms he was given constitutes non-cooperation with removal efforts that prevents the court from finding his removal is not reasonably foreseeable.

An immigration detainee's refusal to cooperate with removal efforts precludes him from obtaining a favorable ruling on a claim under *Zadvydas*. The first federal appellate case to have addressed this issue appears to be *Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003). There, the immigration detainee refused to complete an application for travel documents to Poland, and Poland expressly required the information on the application to determine whether it would issue him travel documents. *Id.* at 1059. The immigration detainee further frustrated removal efforts by providing the government with conflicting information about his identity and family. *Id.* The Ninth Circuit reasoned that "the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock" and held that "an alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the [government's] efforts to remove him." *Id.* at 1060-61.

Though neither the Supreme Court nor the Seventh Circuit appear to have addressed this precise issue in the immigration context, this seems a rather sensible rule—after all, one cannot typically create or self-inflict an alleged constitutional or other harm all one's own and then maintain standing to complain about it. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021) (injury must be fairly traceable to defendant for standing to exist). Several federal courts that have addressed this concern in immigration cases have unanimously agreed with the Ninth Circuit. *See, e.g., Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019); *Hook v. Lynch*, 639 F. Appx. 229 (5th Cir. 2016); *Kovalev v. Ashcroft*, 71 F. Appx. 919, 924 (3d Cir. 2003); *Souleymane v. Olsen*, 2026 WL 785596, 4 (S.D. Ind. Mar. 20, 2026). This rule is also consistent

with 28 U.S.C. § 1231(a)(1)(C), which extends the removal period if an individual refuses to cooperate with removal efforts, and 8 C.F.R. § 241.5(a)(2), which requires such cooperation as a mandatory condition of supervised release.

Here, however, the government has not shown how Mr. Hernandez Chacon's alleged non-cooperation has any effect on the likelihood of his removal. There is no apparent connection between the forms Mr. Hernandez Chacon refused to sign and the government's ability to remove him to Mexico. Unlike in *Pelich*, there is no contention that Mr. Hernandez Chacon was asked to sign forms related to obtaining travel documents or otherwise facilitating his removal. The three documents he was asked to sign are informational, advising Mr. Hernandez Chacon of his obligations and of the government's intentions. The government does not explain how these documents are connected to its ability to remove him or how they somehow hamper the government's ability to see to his removal.

Additionally, the government doesn't contest that Mr. Hernandez Chacon doesn't understand the notices written in English. (An interpreter was used during his criminal proceedings. *See State v. Hernandez Chacon*, No. 49D34-2603-CM-006993 Marion Super. Ct. filed Mar. 9, 2026) (hearing of Apr. 27, 2026)). It is questionable for the government to argue a person should remain detained until they sign a document that is not provided in a language he understands or provided through counsel or through some means that reasonably facilitates his review and knowing execution.

Thus, the issue boils down to whether Mr. Hernandez Chacon's removal is reasonably foreseeable. In his petition, he takes the position that his removal is not reasonably foreseeable because he cannot be removed to a third country, such as Mexico,

without procedural protections the government refuses to give him. In the Warden's answer, he defends ICE's use of Guidance Regarding Third Country Removals, issued March 30, 2025, when removing noncitizens to third countries. But he does not say how far the actual process to remove Mr. Hernandez Chacon to Mexico or another country has progressed. In his reply, Mr. Hernandez Chacon asserts that the government does not have a travel document for him to travel to Mexico, nor has the government filed any other travel document requests.

Without a real prospect of removal to a third country, it is premature for the court to weigh in on what procedures the government must provide to ensure a noncitizen is not removed unlawfully to a country where he will face persecution or torture. Therefore, the court will order further briefing solely on the issue of whether a country has been identified to which Mr. Hernandez Chacon's removal is reasonably foreseeable and the status and likelihood of any removal efforts.

For these reasons, the court:

(1) DISMISSES WITHOUT PREJUDICE Todd Blanche, Attorney General of the United States; Markwayne Mullin, Secretary of the United States Department of Homeland Security; David Venturella, Acting Director of the United States Immigration and Customs Enforcement; and Samuel Olson, Director of the Chicago Immigration and Customs Enforcement Field Office;

(2) ORDERS the Warden to file a supplemental response by **September 11, 2026**, regarding the foreseeability of Mr. Hernandez Chacon's removal, including, in addition to any other relevant evidence, (a) the dates any travel documents have been requested and

the countries from which those travel documents have been requested and (b) if no travel document has been requested, the requirements a potential country of removal has regarding accepting a third country removal request; and

(3) ORDERS that petitioner may file a supplemental reply by **September 18, 2026**.

SO ORDERED.

September 4, 2026

*s/ Damon R. Leichty*
Judge, United States District Court