UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| EMERSON HERNANDEZ CHACON,<br><br>Petitioner,<br><br>v.<br><br>WARDEN,<br><br>Respondent. | CAUSE NO. 3:26cv885 DRL-SJF |

OPINION AND ORDER

Immigration detainee Emerson Hernandez Chacon, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. He is a citizen of Honduras who was ordered removed to Honduras but was granted withholding of removal to that country.

He argues in his petition that his detention by United States Immigration and Customs Enforcement (ICE) was unlawful because he had been granted deferred action in connection with an application for a U visa and because ICE's efforts to remove him to Mexico without adequate process violated his statutory and due process rights.[1] After briefing, this court found that Mr. Hernandez Chacon's claim regarding deferred action was moot because his U visa application was denied. But the court could not determine whether Mr. Hernandez Chacon's removal was reasonably foreseeable to justify his continued detention because there was a dispute regarding a proposed removal to Mexico.

[1] A full recitation of the facts can be found in the court's prior order. *See Hernandez Chacon v. Mullin*, No. 3:26cv885, 2026 WL 2617652, Dkt. 16 at 3 (N.D. Ind. Sept. 4, 2026). Those facts are repeated in this order only as needed.

The court ordered supplemental briefing solely on the issue of whether a country has been identified to which Mr. Hernandez Chacon's removal is reasonably foreseeable and the status and likelihood of any removal efforts. The Warden was specifically ordered to include in the supplemental briefing (a) the dates any travel documents had been requested and the countries from which those travel documents had been requested and (b) if no travel document had been requested, the requirements a potential country of removal has regarding accepting a third country removal request.

In his supplemental response, the Warden reports that ICE Enforcement and Removal Operations (ERO) continues to pursue third country removal. He says no travel document is required to remove Mr. Hernandez Chacon to Mexico, but ICE ERO has not executed the removal "because [Mr.] Hernandez Chacon consistently refuses to acknowledge the notices" [17]. Specifically, the Warden provides copies of three notices of intent to remove Mr. Hernandez Chacon to Mexico, each of which states, "This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) intends to remove you to Mexico" [8-5 at 5 (notice of June 8, 2026); 17-2 at 1 (notice of July 11, 2026); 17-4 at 1 (notice of August 24, 2026)]. The certificate of service on each one says the notice was read to Mr. Hernandez Chacon in Spanish, but he declined to sign to acknowledge receipt. The Warden argues that, because Mr. Hernandez Chacon refuses to acknowledge the notice of intent, he remains in "failure to comply" status. He says Mr. Hernandez Chacon's noncompliance has unnecessarily delayed his removal. Mr. Hernandez Chacon argues that he has been denied a fear interview, though he fears persecution or torture in Mexico.

As support, the Warden relies on certain guidance from the Department of Homeland Security (DHS)—namely, *Guidance Regarding Third Country Removals* from March 30, 2025—as the process the government follows.[2] Before wading into this, the court clarifies two points. First, the court evaluates this guidance only because the government offers it in defense of the petitioner's due process argument. The *Accardi* doctrine requires an agency to follow its rules and procedures as established by statute or regulation, not typically internal guidance unless designed to protect individual rights or intended to have the force of law. *See Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021); *Z.G. v. Olson*, 834 F. Supp.3d 794, 803-04 (N.D. Ind. 2026) (citing cases); *see also Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021) ("federal agencies are required to follow their own regulations"); *Samirah v. Holder*, 627 F.3d 652, 664 (7th Cir. 2010) ("rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency"). But here, the government offers this guidance as its metric rather than argues that it carries less than the effect of law.

Second, this guidance recently has been set aside as unlawful under the Administrative Procedures Act. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 26-1212, 2026 WL 2797801 (1st Cir. Sept. 18, 2026). But this decision has been stayed by the United States Supreme Court pending resolution of the case there. *See Dep't of Homeland Security v. D.V.D.*, No. 26-426 (U.S. docketed Sept. 24, 2026) (Order of Sept. 29, 2026). Accordingly, the court will assess this March 2025 guidance here without regard to other arguments either for or

[2] This guidance is available at https://immigrationlitigation.org/wp-content/uploads/2025/04/43-1-Exh-A-Guidance.pdf (last visited Sept. 30, 2026).

against its enforcement, thereby staying within the points presented today. *See Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026); *Clark v. Sweeney*, 607 U.S. 7, 9 (2025).

Taking the guidance at face value, Mr. Hernandez Chacon is entitled to further process if he asserts a fear of persecution or torture if removed to Mexico. The Warden asserts that Mr. Hernandez Chacon has not affirmatively expressed such a fear of persecution in Mexico to ICE ERO. The Warden thus contends that Mr. Hernandez Chacon has not met his burden to show good reason to believe his removal is not reasonably foreseeable. In a supplemental reply, Mr. Hernandez Chacon argues that the Warden specifies no identity information, application for a travel document, or any other information necessary to secure Mexico's acceptance that he has withheld from ICE. He argues there is no causal connection between his signature on the notice and ICE's ability to remove him, as the Warden does not identify any law, requirement imposed by Mexico, or operational step for which Mr. Hernandez Chacon's acknowledgement of the notice is needed. He argues the Warden has not shown any obstruction on his part or rebutted his showing that removal is not significantly likely in the reasonably foreseeable future.

Mr. Hernandez Chacon reiterates that he does not consent to removal to Mexico because he fears persecution and death there. In previous briefing, he provided email evidence that he asserted a fear of removal to Mexico through his attorney on June 12 and June 19, 2026 [14-1 ("He fears removal to Mexico and believes his life is at risk there."); 14-3 ("[H]e explained he is afraid specifically of cartels in Mexico and of Mexico returning him to Honduras. He does not know anyone in Mexico, and he would not have any safety net there to protect him from specific cartels and government action against him as a Honduran

citizen.")]. In his supplemental reply, Mr. Hernandez Chacon tenders an affidavit in which he swears he told ICE officers three or four times that he fears for his life in Mexico, but he has not been provided a fear interview [18-1]. He argues this constitutes good reason to believe his removal is not reasonably foreseeable.

The overarching issue here is whether Mr. Hernandez Chacon's removal is reasonably foreseeable. The parties agree he is detained under 8 U.S.C. § 1231(a)(6), which provides ICE with discretion to keep him detained while his removal is being carried out, though the detention is limited "to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). After a presumptively reasonable six-month period of detention, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* at 701 (cleaned up). In making this determination, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700.

The Warden relies on Mr. Hernandez Chacon's purported noncompliance to argue that his continued detention is lawful. An immigration detainee's refusal to cooperate with removal efforts precludes him from obtaining a favorable ruling under *Zadvydas*. *See, e.g.*, *Singh v. United States Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019); *Hook v. Lynch*, 639 F. Appx. 229, 230 (5th Cir. 2016); *Kovalev v. Ashcroft*, 71 F. Appx. 919, 924 (3rd Cir. 2003); *Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003). This seems a rather sensible rule—after all, one cannot

typically create or self-inflict an alleged constitutional or other harm all one's own and then maintain standing to complain about it. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021).

But, from there, the Warden stops connecting the dots. The Warden appears to say Mexico's acceptance of Mr. Hernandez Chacon is conditioned on him signing a notice of intent, suggesting, without saying, that Mexico requires this signed notice for Mr. Hernandez Chacon to be removed there. The Warden presents nothing to substantiate the need for such a signed notice. The notice contains no language to alert a noncitizen that his or her signature will be interpreted as consent to removal to a third country (Mexico); and even the government stops short of confessing that it (or Mexico) treats such a signed notice as the noncitizen's consent. There is nothing else in the record to establish that a signature on the informational notice is required to facilitate or cooperate with removal efforts. On this record, the Warden cannot rely on Mr. Hernandez Chacon's purported noncompliance *vis-à-vis* a mere notice (or three notices of the same type) to justify his continued detention or to suggest that the government should be excused for its lack of progress toward removal.

Turning to whether Mr. Hernandez Chacon's removal is reasonably foreseeable, the Warden was specifically ordered to include in a supplemental response the requirements a potential country of removal has regarding accepting a third country removal request. He responds that Mexico does not require a travel document for Mr. Hernandez Chacon to be removed there, but he does not say what Mexico does require for a third country removal. Without this information, it is difficult for the court to assess any material roadblocks explaining why the government has not effectuated Mr. Hernandez Chacon's removal.

There may be one that Mr. Hernandez Chacon identifies, though. He has not been provided with a fear interview. The Warden asserts that Mr. Hernandez Chacon has not affirmatively stated a fear of removal to Mexico. That seems wrong on this record, and the Warden tenders no evidence to back up his view. In contrast, Mr. Hernandez Chacon has provided evidence that he asserted a fear of removal, both through his counsel's emails and in his affidavit. The Warden doesn't explain why the attorney's communications or Mr. Hernandez Chacon's statements of fear are insufficient to trigger at least a screening by United States Citizenship and Immigration Services (USCIS) as provided for in the March 2025 guidance. *See* March 2025 Guidance ("In cases where the alien affirmatively states a fear, USCIS will generally screen the alien within 24 hours of referral from the immigration officer."). The court finds that Mr. Hernandez Chacon has established a basis under the March 2025 guidance for a fear screening by USCIS. Given this record, the time he has been detained (at or near the six-month mark), and the seeming roadblock that the government's delay in affording a fear interview likely causes, Mr. Hernandez Chacon has provided good reason to believe his removal is not reasonably foreseeable insofar as this roadblock (and any others) impede removal. Mr. Hernandez Chacon's removal to Mexico cannot lawfully occur until he has received the process due to him under the March 2025 guidance.[3] Whether and when this will happen is within ICE's control (or USCIS), but it seems that the government has had months when aspirationally it occurs within a day.

[3] Mr. Hernandez Chacon believes he is entitled to more process than provided in this March 2025 guidance. The procedures regarding third country removals are not at issue in this case, so the court relies on the March 2025 guidance as the governing rules over Mr. Hernandez Chacon's case, without deciding whether they comport with due process.

The Warden has not rebutted this showing. According to the March 2025 guidance, after expressing a fear of removal to Mexico, Mr. Hernandez Chacon will receive an interview by a USCIS officer, who will then determine "whether the alien would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal." A negative finding allows ICE to proceed with the removal; a positive finding leads to proceedings before an immigration judge if ICE decides to proceed with the removal to that country. If Mr. Hernandez Chacon's fear is found to be credible, then his removal to Mexico seems but a wish rather than a likely plan. If Mr. Hernandez Chacon's fear is not found to be credible, the Warden still presents no evidence that Mr. Hernandez Chacon's removal to Mexico (or any other third country) could then be carried out in the foreseeable future, even under what conditions or timeline that might occur, despite the opportunity to supplement the record. Instead, the Warden hangs his hat on Mr. Hernandez Chacon's purported noncompliance, but that is a nonstarter on this record. Perhaps there was a different record to present, but the court can only decide these petitions on what it has, not on what might be.

For these reasons, the court:

(1) GRANTS the petition for writ of habeas corpus (ECF 1) and ORDERS the respondent to release Emerson Hernandez Chacon on appropriate conditions of supervised release and to certify compliance with this order by filing a notice with the court by **October 8, 2026**;

(2) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release.

SO ORDERED.

October 6, 2026

*s/ Damon R. Leichty*
Judge, United States District Court